In re Donald E. ARMSTRONG, Debtor.

Donald E. Armstrong, Appellant,

v.

Kenneth A. Rushton, Trustee, and Steppes Apartments, Ltd., Appellees.

BAP No. UT–02–080.
Bankruptcy No. 00–26592.

United States Bankruptcy Appellate Panel for the Tenth Circuit.

Jan. 27, 2004.

---

11. The office of the U.S. Trustee shall be given an opportunity to intervene regarding the claims based on 11 U.S.C. § 727.

Donald E. Armstrong, pro se.

Lon Jenkins of LeBoeuf, Lamb, Greene & MacRae, L.L.P. (Mark W. Dykes with him on the brief), Salt Lake City, UT, for Appellee Kenneth A. Rushton, Trustee.

Jeffrey L. Shields of Callister Nebeker & McCullough (Zachary T. Shields with him on the brief), Salt Lake City, UT, for Appellee Steppes Apartments Ltd.

Before McFEELEY, Chief Judge, NUGENT, and McNIFF, Bankruptcy Judges.

## OPINION

MCFEELEY, Chief Judge.

Debtor/Appellant, Donald E. Armstrong ("Armstrong") appeals an order of the United States Bankruptcy Court for the District of Utah ("bankruptcy court") that assessed $5,000 in contempt sanctions against him. Armstrong argues that his due process rights were violated because the motion filed by Appellees Kenneth A. Rushton and Steppes Apartments, Ltd. (hereinafter when referred to jointly, "Appellees") requested civil contempt sanctions while the sanctions actually imposed by the bankruptcy court were for criminal contempt. We agree that the bankruptcy court wrongly imposed criminal contempt sanctions and REVERSE and REMAND for proceedings consistent with this opinion.

### I. *Appellate Jurisdiction*

The Bankruptcy Appellate Panel has jurisdiction over this appeal. The bankruptcy court's order imposing sanctions is a final order subject to appeal

under 28 U.S.C. § 158(a)(1). *See Mountain America Credit Union v. Skinner (In re Skinner)*, 917 F.2d 444, 446 (10th Cir. 1990) (per curiam). Armstrong timely filed his notice of appeal pursuant to Federal Rule of Bankruptcy Procedure 8002. The parties have consented to this Court's jurisdiction by failing to elect to have the appeal heard by the United States District Court for the District of Utah. 28 U.S.C. § 158(c)(1); Fed. R. Bankr.P. 8001; 10th Cir. BAP L.R. 8001–1.

## II. *Standard of Review*

■ "For purposes of standard of review, decisions by judges are traditionally divided into three categories, denominated questions of law (reviewable de novo), questions of fact (reviewable for clear error), and matters of discretion (reviewable for 'abuse of discretion')." *Pierce v. Underwood*, 487 U.S. 552, 558, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988); see Fed. R. Bankr.P. 8013; *Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1370 (10th Cir. 1996).

■ Whether a bankruptcy court properly imposed civil contempt sanctions is reviewed for abuse of discretion. *Federal Trade Commission v. Kuykendall*, 312 F.3d 1329, 1333 (10th Cir.2002). A bankruptcy court will have abused its discretion if the " 'adjudication of the contempt proceedings is based upon an error of law or a clearly erroneous finding of fact.' " *Id.* (quoting *Reliance Ins. Co. v. Mast Constr. Co.*, 84 F.3d 372, 375–76 (10th Cir.1996)).

## III. *Background*

Armstrong created two trusts in which he was the beneficiary and trustee: the Donald E. Armstrong Family Trust ("Family Trust") created in 1983, and the Donald E. Armstrong Charitable Remainder Unitrust ("Unitrust") created in 1994 (when referred to jointly, "the Trusts").

In the mid–1990s a real estate transaction took place between Steppes Apartments, Ltd. ("Steppes") and the Trusts in which Steppes partially financed the purchase of an apartment building from the Trusts with two promissory Notes ("Notes"), one payable to the Family Trust and one to the Unitrust. After the Trusts accelerated payment on the Notes and imposed a high default interest rate, a series of lawsuits occurred in the Texas state courts. In 1997, Steppes obtained a judgment solely against the Trusts. The judgment included certain penalties under Texas usury statutes and a forfeiture of the underlying Notes issued by Steppes to the Trusts ("Texas Modified Judgment"). The Trusts appealed the Texas Modified Judgment through the Texas appellate system and lost at every level, concluding on June 23, 2002, with a denial of certiorari by the United States Supreme Court.

After the entry of the Texas Modified Judgment, Armstrong caused the Family Trust to transfer its assets to him personally. This transfer precipitated a series of lawsuits in the Utah courts. In the Utah federal courts, Steppes proceeded against the Family Trust and against Armstrong individually, initially alleging fraudulent transfer of property. During the course of the litigation, Steppes amended its original complaint to assert additional claims against Armstrong based on theories of alter ego, civil conspiracy, constructive trust, and unjust enrichment. Ultimately, by minute entry dated March 1, 2000, the Utah federal court ruled that it would enter a default judgment against Armstrong as a result of Armstrong's failure to comply with court orders related to discovery ("Utah Default Ruling"). The Utah Default Ruling determined Armstrong's liability to Steppes, but reserved the issue of Steppes's remedy for a later hearing. Before the Utah Default Ruling against

Armstrong was memorialized as a written order, Armstrong filed a voluntary petition for Chapter 11 relief. In September 2000, Appellee Kenneth A. Rushton ("Rushton") was appointed Chapter 11 trustee for Armstrong's estate.

On January 31, 2002, the bankruptcy court entered Findings of Fact, Conclusions of Law and Order Confirming and Approving Trustee's Second Revised Plan of Reorganization Dated November 19, 2001 and Granting Related Motion ("Confirmation Order"). The Confirmation Order directs Armstrong to surrender various causes of action he was pursuing in state and federal court on the basis that these causes of action were property of the estate. The Confirmation Order also imposes a litigation injunction, which requires Armstrong to apply to the bankruptcy court for the authority to initiate any litigation against various listed parties.[1]

Approximately four months later, Rushton filed a motion entitled "Motion Dated May 23, 2002 by Kenneth A. Rushton, Chapter 11 Trustee, for an Order Directing Donald E. Armstrong to Appear and Show Cause Why He Should Not Be Held in Civil Contempt and Incarcerated Until His Contempt is Purged" ("Contempt Motion"). The Contempt Motion asked that Armstrong be held in civil contempt for numerous intentional violations of the litigation injunction. The Contempt Motion requested that Armstrong be incarcerated until he purged himself of the contempt and that Armstrong be required to pay the Trustee's attorney fees in the actions that violated the litigation injunction. Subsequently, Steppes joined in the Contempt Motion.

On October 18, 2002, the bankruptcy court entered an order "(Contempt Order"), which granted in part and denied in part the Contempt Motion. In the Contempt Order the bankruptcy court found that, in the two months prior to the hearing, Armstrong had filed more than ten motions and five or six lawsuits in violation of the Confirmation Order. The bankruptcy court further found that Armstrong had not complied with the Confirmation Order in dismissing the lawsuits as required therein, and had further violated the Confirmation Order by objecting to the motions for dismissal filed by the Trustee. The bankruptcy court further found that the Confirmation Order was res judicata as to whether the assets of Armstrong's Trusts became property of the estate and that pursuant to the Confirmation Order, Armstrong had no further interests in the Trusts. After finding that incarceration, although permitted by case law, would probably not change Armstrong's behavior, the bankruptcy court sanctioned Armstrong in the amount of $5,000. The bankruptcy court also provided that the Trustee and participating creditors could file an application for fees within twenty days of the order.[2] This appeal timely followed.

1. Armstrong appealed the Confirmation Order to this Court. He also filed a motion asking the bankruptcy court to enlarge the time for filing a notice of appeal of the Confirmation Order. The bankruptcy court denied that motion and he appealed. Both appeals were dismissed by panels of this Court, *see* BAP Nos. UT–02–011, UT–02–038, and have been further appealed to the Tenth Circuit where they are pending. However, the Confirmation Order has not been stayed pending appeal.

2. Following the notice of this appeal, upon application by Rushton and Steppes, the bankruptcy court entered its order on fees and costs on February 24, 2003 ("Fee Order"). The Fee Order awarded $29,983.50 in fees and costs to Rushton and $8,002.50 in fees and costs to Steppes. Armstrong appeal-

## IV. *Discussion*

Neither party disputes the factual findings made by the bankruptcy court. The principal issues here are whether the Contempt Order was for civil or criminal contempt, and whether the contempt proceedings provided Armstrong the requisite due process. We will address each question in turn.[3]

■ This appeal involves sanctions for indirect contempt. While direct contempt occurs in the presence of the court and is traditionally subject to summary adjudication, indirect contempt addresses behavior that occurs outside the presence of the court. *See International Union, United Mine Workers of Am. v. Bagwell,* 512 U.S. 821, 832–33, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994). Indirect contempt is further classified as civil or criminal contempt.

■ The distinction between civil and criminal contempt turns on the "character and purpose" of the sanction. *Bagwell,* 512 U.S. at 827, 114 S.Ct. 2552 (quoting

*Gompers v. Bucks Stove & Range Co.,* 221 U.S. 418, 441, 31 S.Ct. 492, 55 L.Ed. 797 (1911)). Fines imposed for civil contempt are meant to coerce a defendant into compliance with a court order or compensate the complainant for actual losses. *Id.* at 829, 114 S.Ct. 2552 (quoting *United States v. United Mine Workers,* 330 U.S. 258, 303–04, 67 S.Ct. 677, 91 L.Ed. 884 (1947)). If a fine is not compensatory, it will be civil only if the contemnor has the opportunity to avoid the fine and purge his contempt. *Id.* " '[A] flat, unconditional fine' totaling even as little as $50 announced after a finding of contempt is criminal if the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance." *Id.* (quoting *Penfield Co. of Cal. v. SEC,* 330 U.S. 585, 590, 67 S.Ct. 918, 91 L.Ed. 1117 (1947)).

■ In contrast, "[c]riminal contempt is a crime in the ordinary sense[.]" *Bloom v. Illinois,* 391 U.S. 194, 201, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968). Crimi-

---

ed the Fee Order, UT–03–026, and oral argument on that appeal was heard with this one.

**3.** On January 28, 2003, Armstrong filed a Motion for the Court to Reference the Appellant's Petition for Writ of Mandamus and Related Reference ("Reference Motion"). In response, Rushton filed a motion entitled "Appellee Rushton's Motion for Extension of Time to File Opening Brief Pending Ruling by Merits Panel on Appellant's Motion for the Court to Reference the Appellant's Petition for Writ of Mandamus and Related Exhibits" ("Objection"), which opposes the Reference Motion because Armstrong's brief and appendix do not comply with the pertinent local rules of this Court. Alternatively, Rushton requests in the Objection that if this Court grants Armstrong's Reference Motion, that Rushton be given additional time to file his opening brief; specifically ten days after the entry of an order granting the Reference Motion. Steppes joined in Rushton's Objection. In an order filed March 18, 2003, a panel of this Court referred the Objection to the merits panel, but denied the Appellees a time ex-

tension, requiring them to file their briefs within fifteen days of the entry of the Order.

Before we heard this appeal, we issued a notice of deficiency to Armstrong because his appendix did not include a table of contents, a copy of the order or judgment being appealed, a copy of the notice of appeal, and the bankruptcy docket sheet. Armstrong responded by submitting a new appendix. Subsequently, we determined that there were no longer any deficiencies. Because there are no longer any grounds for the Appellees's objections, we now grant Armstrong's Reference Motion.

Finally, Armstrong filed a Motion for an Extension of Time to File Reply Brief and for Permission to File Overlength Briefs ("Reply Brief Motion"). Rushton opposed the Reply Brief Motion, arguing that there are no new issues that would require an overlength brief, nor any extraordinary circumstances to justify an extension of time. We agree and we deny Armstrong's Reply Brief Motion. Because Armstrong's reply brief was filed out of time, we order it stricken.

438

nal contempt sanctions are punitive. They are imposed for a completed act of disobedience to "vindicate the authority of the court." *Bagwell*, 512 U.S. at 828, 114 S.Ct. 2552 (citing *Gompers*, 221 U.S. at 441, 31 S.Ct. 492).

■■■■ Armstrong argues that the contempt sanctions imposed by the bankruptcy court in the Contempt Order were criminal and not civil as characterized in the Contempt Order. When reviewing a contempt sanction, an appellate court must look beyond its stated purpose to the character of the sanction. *Id.* at 827, 114 S.Ct. 2552. Here, we agree that the character of the sanction in the Contempt Order is punitive, and therefore, criminal.

In its order, the bankruptcy court levied a fine of $5,000. This fine was not compensation for any damages suffered by the Appellants as it was not payable to the complainants, but to the clerk of the court. Additionally, there is no indication in the order that the fine was an attempt to coerce Armstrong's compliance with the litigation injunction in the Confirmation Order. Most importantly, Armstrong was offered no opportunity to purge himself of the contempt and avoid the fine.

■■■ Next, Armstrong argues that because a criminal contempt sanction was imposed, he was not given appropriate due process protections. As a criminal penalty, criminal contempt sanctions may not be imposed upon a contemnor unless he has been afforded the necessary Constitutional protections. *Id.* at 826, 114 S.Ct. 2552

(quoting *Hicks v. Feiock*, 485 U.S. 624, 632, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988)). Such protections include proof beyond a reasonable doubt, and for serious criminal sanctions involving imprisonment of more than six months, the right to a jury trial. *Id.* at 838, 114 S.Ct. 2552 (quoting *Bloom*, 391 U.S. at 210, 88 S.Ct. 1477).

■■■■ We do not need to address this constitutional issue here,[4] because the Utah bankruptcy court did not have the jurisdiction to assess criminal sanctions. While the Tenth Circuit has held that bankruptcy courts have statutory authority pursuant to 11 U.S.C. § 105[5] to issue civil contempt orders, *Skinner*, 917 F.2d at 447, it has made no pronouncement on whether bankruptcy courts may issue criminal contempt orders. However, the Utah Federal District Court has determined that matters of criminal contempt sanctions for indirect criminal contempt that occur in the bankruptcy court shall be heard by the district court. D.U. Civ. R. 83–7.6(d). The Utah District Court local rules provide in pertinent part:

> Upon the commission of any such act or conduct deemed to constitute criminal contempt not committed in the presence of the court, the bankruptcy judge may certify forthwith the facts to a judge of the district court and may serve or cause to be served upon any person whose behavior is brought into question under this rule an order requiring such person to appear before a judge of that court upon a day certain to show cause

---

4. Federal courts should decline to address constitutional issues when narrower grounds for a decision exist. *United States v. Cusumano*, 83 F.3d 1247, 1250–51 (10th Cir.1996) (on rehearing en banc).

5. Section 105(a) provides:
The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.
11 U.S.C. § 105(a).

why such person should not be adjudged in contempt by reason of the facts so certified. A judge of the district court, thereupon, in a summary manner will hear the evidence as to the act or conduct complained of and, if it is such as to warrant punishment, may punish such person in the manner and to the same extent as for an equivalent contempt committed before a judge of the district court.

D.U. Civ. R. 83–7.6. In light of this rule, we conclude that the bankruptcy court did not have the jurisdiction to assess criminal sanctions.

The other arguments raised by Armstrong are not relevant to the issues in this appeal.

### V. *Conclusion*

For the foregoing reasons, we conclude that the sanctions imposed by the bankruptcy court were for criminal contempt and therefore, exceeded the bankruptcy court's jurisdiction. Accordingly, we REVERSE and REMAND for proceedings consistent with this opinion.