**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 20 2004**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

In re:  LUCRE MANAGEMENT
GROUP, LLC,

        Debtor,

——————————————————

LUCRE MANAGEMENT GROUP,
LLC,

        Appellant,

v.

SCHEMPP REAL ESTATE, LLC,

        Appellee.

No. 03-1086

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 02-AP-1887 (PAC))**

---

Richard A. Marsh of Samson, Pipis & Marsh, LLC, Longmont, Colorado, for
Appellant.

Cynthia T. Kennedy of Kennedy & Kennedy, P.C., Lafayette, Colorado, for
Appellee.

---

Before **LUCERO**, **McKAY**, and **HARTZ**, Circuit Judges.

---

**McKAY**, Circuit Judge.

---

In this appeal, Lucre Management Group asks us to reverse an order finding it in criminal contempt of a bankruptcy court order. The relevant facts are few and undisputed. Schempp Real Estate was a secured creditor during Lucre's bankruptcy proceeding. The single asset involved was an eight-unit condominium complex. On December 26, 2001, the bankruptcy court entered an order requiring that "whatever funds are collected from the properties are to be used solely to pay expenses of the properties, pursuant to the guidelines of In re Morning Star Ranch Resorts, 64 B.R. 818 (Bankr. D. Colo. 1986)." Aplt. App., at 51. Under Morning Star, Lucre was prohibited from using rents to pay any administrative cost of its bankruptcy. 64 B.R. at 822.

About six months later, Schempp Real Estate filed a motion arguing that Lucre violated Morning Star by improperly allocating rents. Aplt. App., at 64-65. After a hearing, the bankruptcy court agreed and found that Lucre's "actions in using rents received from its property in the amount of $545.34 to pay administrative fees to the U.S. Trustee and for the Debtor's bank service charges are in violation and contemptuous of the Court's Orders." Id. at 74. The court ordered Lucre to pay the receiver "$545.34 plus 8% interest from the date the wrongful payment was made, on or before October 3, 2002 failing which the amount due, plus a $1000 sanction, shall become the judgment of this Court." Id.

Lucre appealed, and the district court affirmed the Order of Contempt. Id.

at 164.  In addition to affirming, the district court characterized the contempt (for the first time) as being criminal in nature.  Id. at 160.  Lucre asks us to reverse both the bankruptcy court's Order of Contempt and the district court's conclusion that the contempt was criminal rather than civil.

We review a finding of contempt for an abuse of discretion.  Federal Trade Comm'n v. Kuykendall, 312 F.3d 1329, 1333 (10th Cir. 2002).  To be held in contempt, "a court must find the party violated a specific and definite court order and the party had notice of the order."  In re Nielsen, 53 F.3d 342 (Table), 1995 WL 247461, at *1 (10th Cir. April 27, 1995).  Here, the bankruptcy court entered a specific order requiring that rents "are to be used solely to pay expenses of the properties" pursuant to Morning Star.  Aplt. App., at 51.  The bankruptcy court reiterated Lucre's obligation to use rents only for property expenses at the hearing on the Motion for Relief from Stay.  Id. at 114-15.  Lucre's obligation was stated a third time when the court dismissed the bankruptcy but retained jurisdiction for the expressed purpose of addressing allegations that Lucre violated Morning Star.  Id. at 63.  Thus, it is clear that Lucre had notice that it was under an unequivocal court order not to use rents to pay the administrative costs of its bankruptcy.

It is just as clear that Lucre violated this order.  Lucre's own profit and loss statement shows that it used rents to pay $500 to the United States Trustee (a classic bankruptcy administration cost) and to pay a $45.34 bank service charge.

Id. at 70. We find no abuse of discretion in entering the Order of Contempt as a result of this violation of a known court order. In doing so, we do not imply that either Lucre or its counsel had bad motives or are of nefarious character. We simply affirm the Order of Contempt because Lucre was on notice of a court's order and violated it, and we do not assess whether this was inadvertent or an act of willful disobedience.

Although we affirm the Order of Contempt, we reverse the district court's judgment to the extent that it characterizes the contempt as criminal.

> [W]hether a contempt is civil or criminal turns on the character and purpose of the sanction involved. Thus, a contempt sanction is considered civil if it is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court.

International Union, United Mine Workers of America v. Bagwell, 512 U.S. 821 827-28 (1994) (internal quotations and citations omitted). In civil contempt, "the contemnor is able to purge the contempt and obtain his release by committing an affirmative act, and thus carries the keys of his prison in his own pocket." Id. at 828 (internal quotations and citations omitted). On the other hand, "a completed act of disobedience that the contemnor cannot avoid" is criminal in nature. Id. (internal quotations and citations omitted).

Applying these principles, we conclude that the character and purpose of the contempt here is civil in nature. We acknowledge the district court's

reasoning that "Lucre had already violated the court's order to comply with <u>In re Morningstar</u>, and the contempt sanction was based on this violation." Aplt. App. at 170. But the basic character of the Order of Contempt was remedial in nature: it only required Lucre to pay the $545.34 (plus interest) back to the receiver. While the $1,000 sanction is punitive, the bankruptcy court gave the "key to this prison" to Lucre by only imposing this sanction if Lucre failed to pay what it owed. Thus, we conclude that the contempt was civil because it was for the benefit of Schempp Real Estate (Lucre's creditor) and because the punitive component of the sanction was within Lucre's control. We also think it is significant, although not dispositive, that both parties participated in the contempt hearing with the assumption that the contempt was civil and that the word "criminal" never appeared in the Motion to Show Cause or in the notice for the contempt hearing. Aplt. Br. at 20; Aple. Br. at 9-10. For all these reasons, we reverse the district court's judgment to the extent that it characterized Lucre's contempt as criminal.

Schempp Real Estate asks us to affirm its award of costs and fees related to its appeal in the district court and to grant a similar award for this appeal. We agree with the district court that Lucre's arguments in appealing the original Order of Contempt are "utterly without merit" and affirm the award of those costs and fees to Schempp Real Estate. Aplt. App., at 171. However, since the instant

appeal raises a substantial question about the proper characterization of the contempt, we do not award either party costs or fees associated with this appeal.

Finally, we GRANT Lucre's motion for leave to file a reply brief in support of its motion for sanctions regarding an alleged disclosure of confidential materials but DENY its motion for sanctions. This motion relates to a state court proceeding between the parties, and the remedy, if any is appropriate, must be sought elsewhere.

AFFIRMED in part and REVERSED in part.