FILED
U.S. Bankruptcy Appellate
Panel of the Tenth Circuit

**January 21, 2025**

Anne M. Zoltani
Clerk

NOT FOR PUBLICATION[1]

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE TENTH CIRCUIT

_____

| | |
|---|---|
| IN RE SHERRY ANN MCGANN, | BAP No. CO-24-7 |
| Debtor. | |
| _____ | |
| SHERRY ANN MCGANN, | Bankr. No. 20-18118<br>Chapter 7 |
| Appellant, | |
| v. | |
| | OPINION |
| JEANNE Y. JAGOW, Chapter 7 Trustee, | |
| Appellee. | |

_____

Appeal from the United States Bankruptcy Court
for the District of Colorado

_____

Before **HALL**, **PARKER**, and **THOMAS**,[2] Bankruptcy Judges.

_____

THOMAS, Bankruptcy Judge.

It has been said that the purpose of the discipline enforced by a court for contempt is to "keep the streams of justice clear and pure."[3] This cautionary tale is a reminder that

---

[1] This unpublished opinion may be cited for its persuasive value, but is not precedential, except under the doctrines of law of the case, claim preclusion, and issue preclusion. 10th Cir. BAP L.R. 8026-6.

[2] Paul R. Thomas, Bankruptcy Judge, United States Bankruptcy Court for the Eastern District of Oklahoma, sitting by designation.

[3] Lord Hardwicke, _Case of Printer of St. James's Evening Post_ (1742), 2 Atk. 471.

such discipline must be imposed even when the party subject to a court order seemingly demonstrates some modicum of compliance.

Here, a chapter 7 debtor owned real property and improvements, which represented her most significant tangible asset. The chapter 7 trustee sought access to the property to ascertain its value to the estate, but the debtor thwarted all efforts to do so. The trustee filed a motion for turnover. The Bankruptcy Court granted it, ordering the debtor to timely provide the trustee with a key to the property. The debtor failed to comply. The trustee was forced to file a second turnover motion along with a contempt motion for the debtor's failure to comply with the first turnover order. Days before the hearing and nearly eleven weeks after the deadline, the debtor mailed a key to the United States Trustee rather than the trustee as required. The Bankruptcy Court found the debtor in contempt and awarded the trustee attorney's fees as a sanction. The debtor appealed. For the reasons that follow, we affirm the Bankruptcy Court's decision.

## I.    Background

On December 22, 2020, Debtor-Appellant Sherry McGann filed a petition for chapter 7 bankruptcy relief, and Jeanne Y. Jagow was appointed as the chapter 7 trustee (the "Trustee"). On the petition date, the Appellant owned real property and improvements located at 1535 Grand Avenue, Grand Lake, Colorado 80447 (the "Property").

On January 5, 2021, Appellant filed her Schedule C and claimed a homestead exemption in the amount of $105,000 against the Property. She also listed four claims

2

secured by the Property on her Schedule D: (1) a first mortgage held by Cenlar FSB[4] in the amount of $420,927; (2) a second mortgage held by Elevations Credit Union in the amount of $144,467; (3) a lien held by Oka Kope[5] in the amount of $500,000; and (4) a lien held by Oka Kope in the amount of $351,000. The Appellant listed the two liens held by Oka Kope as disputed.

On March 31, 2021, the Bankruptcy Court entered an order granting Appellant a discharge under 11 U.S.C. § 727.[6] In June 2021, the Trustee filed an adversary proceeding against Oka Kope and another creditor seeking to avoid and recover multiple alleged fraudulent transfers in connection with the Hawaii Property and related entities. The Trustee settled the adversary proceeding whereby Oka Kope agreed to withdraw its secured claims against the Property and Oka Kope and the other creditor agreed to withdraw their claims against Appellant's bankruptcy estate (the "Settlement Agreement"). In return, the Trustee agreed to release all claims the bankruptcy estate had against Oka Kope and the other creditor, including claims related to the Hawaii Litigation.

---

[4] This lien is held by Wilmington Trust N.A. on behalf of Cenlar FSB.

[5] Prior to filing for bankruptcy, Appellant was the sole member of an LLC, which owned real property in Hawaii (the "Hawaii Property"). In October 2018, as part of a joint venture, she transferred the Hawaii Property from her LLC to 1450 Oka Kope, LLC ("Oka Kope"). Appellant's LLC held 49% of the membership interests of Oka Kope, and another LLC, owned by friends of the Appellant, owned the remaining 51% of the membership interests of Oka Kope. On May 14, 2019, Appellant appeared to transfer the Oka Kope membership interests held by her LLC back to Oka Kope. Subsequently, Appellant and the various entities became involved in disputes and litigation related to, among other things, the ownership of the Hawaii Property and the Oka Kope membership interests (the "Hawaii Litigation"). *See* Settlement Agreement, *in* Appellant's App. at 8.

[6] Bankr. ECF No. 63.

3

Appellant objected to the Settlement Agreement. The Bankruptcy Court held a hearing on the Settlement Agreement on May 3, 2022. There, the Bankruptcy Court overruled Appellant's objection with her consent and approved the Settlement Agreement. Oka Kope subsequently released its liens against the Property.

Not long after, the Trustee began seeking access to the Property to determine whether it should be liquidated for the benefit of the estate. Appellant opposed all efforts.[7] In June 2023, the Trustee filed the *Trustee's Application to Employ LIV Sotheby's International Realty as Listing Agent/Broker*[8] to sell the Property, which the Bankruptcy Court granted over Appellant's objection and entered an order authorizing the Trustee to employ LIV Sotheby's International Realty.[9]

On June 23, 2023, Appellant filed a *Motion to Convert Chapter 7 to Chapter 11, 9013-1.1 Notice, Certificate of Service* (the "Conversion Motion")[10] seeking to convert the case to chapter 11. While the Conversion Motion was pending, on August 25, 2023, the Trustee filed the First Turnover Motion, to which Appellant responded.

---

[7] According to the Trustee, Appellant "filed two Motions to Convert her case to different chapters of bankruptcy relief, refused to cease Mystic Magic Mushroom operations at the . . . Property, and denied the Trustee's request to list the estate as a co-insured on [the] . . . Property insurance policy." *Motion for Order Requiring the Debtor to Turnover Property and Records to the Trustee* (the "First Turnover Motion") at 2, Bankr. ECF No. 297.

[8] Bankr. ECF No. 265.

[9] *Amended Order Granting Trustee's Application to Employ LIV Sotheby's International Realty as Listing Agent/Borker [sic]*, *in* Appellant's App. at 130 (Bankr. ECF No. 268).

[10] Bankr. ECF No. 271.

On October 16-17, 2023, the Bankruptcy Court held a hearing (the "October Hearing") on the Conversion Motion and the First Turnover Motion. At the October Hearing, Appellant made an oral motion to withdraw the Conversion Motion, which the Bankruptcy Court granted with prejudice. On October 24, 2023, the Bankruptcy Court entered an *Order Requiring the Debtor to Turnover Property to the Trustee* (the "First Turnover Order"), which required Appellant to provide the Trustee with a key to the Property no later than November 13, 2023, and allow the Trustee reasonable access to the Property.[11]

On October 27, 2023, Appellant filed the *Debtors [sic] Motion for Reconsideration on Turnover of Property Doc#321*[12] (the "First Motion for Reconsideration"). In the First Motion for Reconsideration, Appellant argued that as a pro se litigant she was prejudiced by the "inaccurate comments and assumptions the court made on the record" and that the Bankruptcy Court lacked knowledge of the context in which the bankruptcy case was filed.[13] Appellant insisted she had the ability to pay her debts and therefore "close" the bankruptcy case.[14] Appellant also contended a forced

---

[11] First Turnover Order, Bankr. ECF No. 321. The Debtor appealed the First Turnover Order, which was the subject of BAP Case No. 23-24. The BAP dismissed the case as moot on May 3, 2024, as by that time the Trustee had obtained the access to the Property ordered by the Court in the First Turnover Order. BAP Case No. 23-24, ECF. No. 61.

[12] *Debtors [sic] Motion for Reconsideration of Turnover of Property Doc#321*, Bankr. ECF No. 323.

[13] *Id.* at 2.

[14] *Id.*

turnover would devalue the Property because the Property was in disarray, and selling the Property as such would lead to a diminished value for the bankruptcy estate.

Appellant also filed the *Debtors [sic] Motion to Voluntarily Dismiss Chapter 7 for Cause* (the "Motion to Dismiss").[15] In the Motion to Dismiss, Appellant asserted she intended to pay the liens held by Cenlar FSB and Elevations Credit Union along with other allegedly legitimate claims. Appellant also asserted she would not pay certain other claims, nor would she pay the Trustee's administrative expenses for legal counsel and accounting professionals, what she deemed to be the illegitimate claims. Appellant contended she had been approved for a conditional loan to pay the legitimate creditors subject to the Bankruptcy Court's approval.

Appellant failed to provide the Trustee with a key to the Property by November 13, 2023. On January 3, 2024, the Trustee filed (i) a *Motion for Order Requiring the Debtor to Turnover Property (1535 Grand Avenue) to the Trustee* (the "Second Turnover Motion")[16] requesting the Bankruptcy Court order Appellant to vacate the Property and remove her possessions and (ii) a *Motion for Order to Show Cause as to Why Debtor Should Not Be Held in Contempt for Failure to Comply with Turnover Order and for Sanctions* (the "Contempt Motion").[17] Less than two weeks before the February 12, 2024 hearing on the Contempt Motion (the "Contempt Hearing") and, notably, approximately

---

[15] Motion to Dismiss, *in* Appellant's App. at 364.
[16] Second Turnover Motion, Bankr. ECF No. 356.
[17] Contempt Motion, Bankr. ECF No. 355.

eleven weeks after the deadline in the First Turnover Order, Appellant mailed a key to the Office of the United States Trustee rather than to the Trustee as required.

Prior to the Contempt Hearing, the Bankruptcy Court entered an order denying the First Motion for Reconsideration[18] and an *Order Denying Motion to Dismiss*.[19] Observing that the Motion to Dismiss appeared to be an effort to avoid turnover of the Property, the Bankruptcy Court determined that, after the October Hearing, no factual disputes remained and found, under the totality of the circumstances, no cause existed to support dismissal. On February 5, 2024, Appellant filed the *Debtors [sic] Motion for Reconsideration (Docket No. 371) and Debtor Noting & Correcting the Record - Offers of Proof*,[20] which the Bankruptcy Court later denied.[21]

At the Contempt Hearing, Appellant argued that the Trustee was seeking entry of a contempt order with unclean hands and made various other arguments related to her treatment by the Bankruptcy Court and the Trustee. The Bankruptcy Court rejected those arguments orally at the Contempt Hearing and found that Appellant "ha[d] engaged in civil contempt of the Turnover Order" and "determin[ed] that the Chapter Trustee was

---

[18] *Order Denying Second Motion For Reconsideration Of Turnover Order*, *in* Appellant's App. at 442 (Bankr. ECF No. 342).

[19] *Order Denying Motion to Dismiss*, *in* Appellant's App. at 606 (Bankr. ECF No. 371).

[20] *Debtors [sic] Motion for Reconsideration (Docket No. 371) and Debtor Noting & Correcting the Record - Offers of Proof*, *in* Appellant's App. at 627 (Bankr. ECF No. 379).

[21] *Order Denying Motion for Reconsideration of Order Denying Motion to Dismiss*, *in* Appellant's App. at 675 (Bankr. ECF No. 397).

entitled to an award of attorney's fees as a sanction."[22] The Bankruptcy Court in turn directed the Trustee's counsel "to file a motion seeking [an] award of attorney's fees, with appropriate supporting documentation."[23] As for the Second Turnover Motion, the Bankruptcy Court held that in abeyance and "declined to rule on the substance" of that motion "pending the Chapter 7 Trustee's attempting to access the . . . Property."[24] Subsequently, the Bankruptcy Court entered *Minutes of Proceeding* (the "Contempt Order") summarizing its ruling.

On February 20, 2024, Appellant filed a Notice of Appeal of multiple orders. The BAP then entered an *Order Construing Notice of Appeal as Multiple Notices of Appeal* and assigned BAP Case No. 24-7 to the appeal of the Contempt Order.[25] Following issuance of an *Order to Show Cause Why Appeal Should Not be Dismissed as Interlocutory* and related responses, this Court entered an *Order Allowing Appeal to Proceed in Part and Dismissing Appeal in Part*[26] limiting this appeal to review of the Contempt Order.

## II. Jurisdiction

The BAP has jurisdiction to hear timely filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit, unless a party elects

---

[22] *Minutes of Proceeding/Minute Order* at 2, *in* Appellant's App. at 666 (Bankr. ECF No. 386).

[23] *Id.*

[24] *Id.* at 3.

[25] BAP ECF No. 11.

[26] BAP ECF No. 15.

to have the district court hear the appeal.[27] Appellant timely filed an appeal of the Contempt Order, which the BAP ultimately determined was a final order. The scope of this Court's review is limited to review of the Contempt Order. No party has elected to have the district court hear the appeal. Accordingly, this Court has jurisdiction to hear this appeal.

### III.    Issue on Appeal and Standard of Review

Although Appellant presents several issues on appeal,[28] the central issue is whether the Bankruptcy Court abused its discretion in finding Appellant in civil contempt for failure to comply with the First Turnover Order and in awarding attorney's fees as a sanction.

This Court reviews a contempt finding for an abuse of discretion.[29] Similarly, "[w]hether a bankruptcy court properly imposed civil contempt sanctions is also reviewed for abuse of discretion."[30] Under the abuse of discretion standard, this Court will not disturb a bankruptcy court's decision unless it "has a definite and firm conviction

---

[27] 28 U.S.C. § 158(a)(1); *see id.* § (b)(1) and (c)(1); Fed. R. Bankr. P. 8003, 8005.

[28] Appellant lists the following as the issues on appeal:

ISSUE ONE: Misuse of the Law and Violation of Constitutional Rights in the Forced Turnover that was unnecessary and sought with unclean hands.
* * *
ISSUE TWO: Counsel did not have permission to prosecute a forced turnover against [Appellant].
* * *
ISSUE THREE: Removal of the Trustee who evoked the unclear contempt and attorney fee order.

Appellant's Opening Br. at 4, 7, 10.

[29] *In re Lucre Mgmt. Grp., LLC*, 365 F.3d 874, 875 (10th Cir. 2004).

[30] *In re Armstrong*, 304 B.R. 432, 435 (10th Cir. BAP 2004).

that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances."[31] "An abuse of discretion occurs when the [trial] court's decision is 'arbitrary, capricious or whimsical,' or results in a 'manifestly unreasonable judgment.'"[32] "A clear example of an abuse of discretion exists where the trial court fails to consider the applicable legal standard or the facts upon which the exercise of its discretionary judgment is based."[33]

## IV.    Analysis

Bankruptcy courts have civil contempt power under 11 U.S.C. § 105 with the authority to hold parties in civil contempt and award sanctions.[34] Additionally, the Tenth Circuit has recognized that § 105(a) is intended to empower bankruptcy courts with the inherent powers imbued in the federal district court to sanction conduct abusive of judicial process; this includes civil contempt power.[35] To hold a party in contempt, a

---

[31] *In re Arenas*, 535 B.R. 845, 849 (10th Cir. BAP 2015) (quoting *Moothart v. Bell*, 21 F.3d 1499, 1504 (10th Cir. 1994)).

[32] *Moothart*, 21 F.3d at 1504-05 (quoting *United States v. Wright*, 826 F.2d 938, 943 (10th Cir. 1987)).

[33] *Jackson v. Los Lunas Cmty. Program*, 880 F.3d 1176, 1191 (10th Cir. 2018) (quoting *Ohlander v. Larson*, 114 F.3d 1531, 1537 (10th Cir. 1997)).

[34] *See* 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."); *see also Taggart v. Lorenzen*, 587 U.S. 554, 557 (2019) (civil contempt for violating an order is established if there is "*no fair ground of doubt*" as to whether the order was violated); *In re Skinner*, 917 F.2d 444, 449 (10th Cir. 1990) (explaining that a bankruptcy court's authority to award contempt sanctions is an "adjudication of a right created by federal statute" and part of debtor's right "to have his affairs wound up in a court of bankruptcy").

[35] *See, e.g.*, *In re Courtesy Inns, Ltd.*, 40 F.3d 1084, 1089 (10th Cir. 1994); *In re Skinner*, 917 F.2d at 447.

10

court must find the party violated a specific and definite court order and the party had notice of this order.[36] Additionally, in civil contempt cases, the proof of contempt must be clear and convincing.[37] An award of civil contempt sanctions may include actual damages, attorney's fees, and punitive damages.[38] Attorney's fee awards are remedial and designed to compensate complainants for losses incurred as a result of the contemnor's violations.[39]

The Tenth Circuit recognizes two types of civil contempt orders: coercive and compensatory.[40] Generally, a coercive civil contempt order contains a sanction used to coerce the persons in contempt to comply with the court order and provides those persons with an opportunity to purge themselves by complying.[41] "[C]oercive civil sanctions may only continue until terminated by compliance."[42] In contrast, when the civil contempt order and resulting sanctions are compensatory in nature, contumacious actors cannot

---

[36] *In re Lucre Mgmt. Grp., LLC*, 365 F.3d 874, 875 (10th Cir. 2004).

[37] *O'Connor v. Midwest Pipe Fabrications, Inc.*, 972 F.2d 1204, 1210 (10th Cir. 1992).

[38] *See e.g.*, *In re C.W. Mining Co.*, 625 F.3d 1240, 1246 (10th Cir. 2010); *In re Skinner*, 917 F.2d at 447; *In re Shafer*, 63 B.R. 194, 198 (Bankr. D. Kan. 1986) (civil contempt sanctions may include attorney's fees) (citing *Perry v. O'Donnell*, 759 F.2d 702 (9th Cir. 1985); *TWM Mfg. Co., Inc. v. Dura Corp.*, 722 F.2d 1261 (6th Cir. 1983); *Commodity Futures Trading Comm'n. v. Premex, Inc.*, 655 F.2d 779 (7th Cir. 1981); *Vuitton et Fils, S.A. v. Carousel Handbags*, 592 F.2d 126 (2nd Cir. 1979)); *In re Morgan*, No. 2:20-CV-00291-DBB, 2021 WL 4949150, at *10 (D. Utah Oct. 25, 2021).

[39] *See Allied Materials Corp. v. Superior Products Co., Inc.*, 620 F.2d 224, 227 (10th Cir. 1980) (party entitled to attorney's fees as compensation for prosecuting its contempt action).

[40] *See O'Connor*, 972 F.2d at 1211.

[41] *Id.*

[42] *Id.* (quoting *United States v. Pro. Air Traffic Controllers Org., Loc. 504*, 703 F.2d 443, 445 (10th Cir. 1983)).

11

"purge" themselves of a compensatory contempt order and resulting sanctions until those sanctions are satisfied.[43] This is because a court imposes compensatory sanctions "to compensate the contemnor's adversary for injuries resulting from the contemnor's noncompliance[.]"[44]

At the Contempt Hearing, the Bankruptcy Court considered the Trustee's contention that Appellant's failure to provide the Trustee with the key to the Property in a timely manner caused damages to the bankruptcy estate. The Bankruptcy Court also considered the United States Trustee's report about his receipt of the key weeks after the deadline in the First Turnover Order and Appellant's arguments regarding the Trustee's "unclean hands" in seeking entry of a contempt order. The Bankruptcy Court found that Appellant engaged in civil contempt of the First Turnover Order and determined that the Trustee was entitled to attorney's fees as a sanction.

Appellant's position in this appeal can be distilled to the following arguments. First, she contends "[t]he Trustee had no damages and invaded the [Appellant's] home on February 28, 2024 [sic] therefore they suffered no losses."[45] Second, Appellant asserts she "does not owe the fees as they were obtained by unclean hands."[46] Finally, at oral

---

[43] *Id. See, e.g.*, *RES-GA Cobblestone, LLC v. Blake Const. & Dev., LLC*, 718 F.3d 1308 (11th Cir. 2013) (concluding the appeal of a contempt order involving coercive and compensatory sanctions was moot because appellant had complied and/or satisfied the sanctions imposed).

[44] *O'Connor*, 972 F.2d at 1211 (quoting *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1147 (9th Cir. 1983)).

[45] Appellant's Opening Br. at 20.

[46] *Id.* at 25.

argument, Appellant asserted she was subjected to excessive stress and mental anguish that interfered with her ability to comply with the First Turnover Order.

The Trustee argues the Bankruptcy Court did not err in finding Appellant in civil contempt. Specifically, she argues entry of the Contempt Order was appropriate based on Appellant's purposeful lack of compliance with the First Turnover Order and highlights that "proper notice was given and due process considerations were fully satisfied" plus only compensatory damages were awarded.[47]

The record makes clear that Appellant had notice she was obligated by court order to timely provide the Trustee with a key to the Property and allow the Trustee reasonable access to the Property. Appellant responded to the First Turnover Motion. The Bankruptcy Court held a hearing on the First Turnover Motion, at which Appellant appeared. The Bankruptcy Court also held a hearing to enter an oral ruling granting the First Turnover Motion, at which Appellant appeared again. Additionally, Appellant appealed the First Turnover Order[48]—yet another indication Appellant was fully aware of the First Turnover Order.

Furthermore, the First Turnover Order contained very definite terms, including the following specific orders:

---

[47] Appellee's Resp. Br. at 9.
[48] Appellant appealed the First Turnover Order without obtaining a stay pending appeal; although she sought a stay, the request was denied. *See Emergency Motion to Stay Pending Appeal for Turnover on Feb 28th and March 6th, 2024*, Bankr. ECF No. 395; *Order Denying Emergency Motion for Stay Pending Appeal*, Bankr. ECF No. 399.

> [T]he Debtor shall turn over to the Trustee[49] a key (or keys) to the real property and improvements located at 1535 Grand Avenue, Grand Lake, CO 80447 (the "Grand Lake Property").
>
> [T]he Debtor shall allow the Trustee, her agents and representatives reasonable access to the Grand Lake Property to inspect, market, repair, improve, monitor, visit, and sell it.
>
> * * *
>
> [T]he Debtor's [sic] must comply with all of the foregoing by no later than **November 13, 2023**.[50]

It is abundantly clear Appellant violated the First Turnover Order as she failed to timely turnover over the key to the Trustee and failed to timely allow the Trustee reasonable access to the Property. The *Trustee's Status Report on Debtor's Motion to Voluntarily Dismiss Chapter 7 for Cause* (the "Status Report")[51] indicates the Trustee requested the key from Appellant several times after the deadline and warned Appellant that absent compliance, the Trustee would file a motion for an order to show cause why Appellant should not be held in contempt.[52] While the record indicates the United States Trustee received an envelope postmarked January 31, 2024, from Appellant containing the key,[53] this delivery was made to the wrong person approximately eleven weeks after the prescribed deadline.

Additionally, in the Contempt Order, the Bankruptcy Court described the conduct that caused the imposition of sanctions:

---

[49] The First Turnover Order explicitly provided in its opening paragraph that the term "Trustee," as used in the order, referred to "Jeanne Jagow, Chapter 7 Trustee." Bankr. ECF No. 321 at 1.

[50] First Turnover Order at 1, 2 (emphasis in original), Bankr. ECF No. 321.

[51] Status Report, Bankr. ECF No. 354.

[52] *See* Ex. A to Status Report, Bankr. ECF No. 354.

[53] *See* Contempt Order at 1, *in* Appellant's App. at 665 (Bankr. ECF No. 386).

14

Counsel advised that the Chapter 7 Trustee believed that Appellant had purposely not complied with the Turnover Order because she had mailed a key to the real property and improvements located at 1535 Grand Avenue, Grand Lake, CO 80447 (the "Grand Lake Property") to the *United States Trustee* rather than the *Chapter 7 Trustee* as required by the Turnover Order. While the sending of the key did indicate some modicum of compliance, [Appellant's] failure to provide the key in a timely manner, and then her sending of the key to the United States Trustee rather than the Chapter 7 Trustee, had caused damages to the bankruptcy estate.[54]

Thus, we do not have a definite and firm conviction that the Bankruptcy Court made a clear error of judgment or exceeded the bounds of permissible choice when it found Appellant in civil contempt. Similarly, the Bankruptcy Court's determination that the Trustee was entitled to an award of attorney's fees as a sanction was not an abuse of its discretion.[55]

We also reject Appellant's arguments for the reasons explained below. First, Appellant's argument—that because she supplied a key to the Property (albeit to the wrong party) and the Trustee was eventually able to gain access, no damages were incurred—lacks merit. The record reflects the estate incurred attorney's fees as a direct consequence of Appellant's recalcitrance in failing to timely turn over the key, so the award of attorney's fees is compensatory in nature and appropriate.[56]

---

[54] *Id.*

[55] *O'Connor v. Midwest Pipe Fabrications, Inc.*, 972 F.2d 1204, 1211 (10th Cir. 1992) (compensatory sanctions "compensate the contemnor's adversary for injuries resulting from the contemnor's noncompliance") (quoting *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1147 (9th Cir. 1983)).

[56] *See, e.g.*, *In re C.W. Mining Co.*, 625 F.3d at 1246; *In re Skinner*, 917 F.2d at 447.

Next, Appellant's argument that sanctions are inappropriate because of the Trustee's "unclean hands" is also unpersuasive and not supported by the record.[57] The Tenth Circuit has held that "[t]he unclean hands doctrine means, in general, that equity will not aid a party whose conduct has been unlawful, unconscionable, or inequitable."[58] Courts have discretion in deciding whether to apply the unclean hands doctrine.[59] The Bankruptcy Court considered Appellant's accusations against the Trustee presented at the Contempt Hearing and rejected those arguments when it found Appellant in contempt and awarded sanctions.[60] There is no evidence in the record to show the Trustee has acted unlawfully, unconscionably, or inequitably in bringing the Contempt Motion. The record supports a finding that the Trustee sought sanctions solely due to Appellant's failure to comply with the First Turnover Order.

Finally, while we are deeply sympathetic to Appellant's argument that her excessive stress and mental anguish interfered with her ability to comply with the First Turnover Order, Appellant appears to have waived and forfeited this argument. First,

---

[57] *See, e.g.*, *In re Lane*, 546 B.R. 445, 454-55 (10th Cir. BAP 2016) (court had previously ruled against debtor regarding his accusations that trustee continued to "demonize" him and did not believe trustee's motion for sanctions was pursued for an improper purpose).

[58] *CGC Holding Co., LLC v. Hutchens*, 974 F.3d 1201, 1214 (10th Cir. 2020).

[59] *Id.*

[60] Appellant appears to have leveled many of the same accusations at the Trustee earlier in the case and continues to do so. The First Turnover Order and the Contempt Order support the inference that the Bankruptcy Court simply did not believe the Trustee was proceeding with an improper purpose in bringing the Contempt Motion. Moreover, most of Appellant's accusations refer to the Trustee's conduct in matters in the underlying bankruptcy proceeding unrelated to the matter before the Court in this appeal.

Appellant's failure to raise this issue in her opening brief waives the issue on appeal.[61]

Even if we were to construe her opening brief to include this argument, Appellant failed

to provide a transcript of the October Hearing and thus there is nothing in the record

demonstrating that the issue was presented to the Bankruptcy Court below.[62] We are

bound by Tenth Circuit precedent that issues not presented in the trial court are forfeited

on appeal.[63] While the Trustee acknowledged at oral argument that Appellant may have

mentioned this argument below in passing, Appellant's failure to provide a sufficient

record is grounds for this Court to decline to consider this issue. Even if the argument

was not waived or forfeited, the ruling on the Contempt Motion was subject to the

Bankruptcy Court's discretion and, based on the record, we cannot conclude the

Bankruptcy Court abused its discretion in entering the Contempt Order.

## V.    Conclusion

Based on the record, we conclude the Bankruptcy Court did not abuse its

discretion in entering the Contempt Order. Accordingly, this Court AFFIRMS the

Bankruptcy Court.

---

[61] *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 984 n.7 (10th Cir. 1994) (concluding the failure to raise an issue in an opening brief waives that issue).

[62] 10th Cir. BAP L.R. 8009-3 provides that "[t]his Court need not remedy any failure by a party to designate an adequate record. When the party asserting an issue fails to provide a record sufficient for considering that issue, this Court may decline to consider it."

[63] *See United States v. Jarvis*, 499 F.3d 1196, 1201 (10th Cir. 2007).